**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-24232

| | |
|---|---|
| LA SALLE EDUCATIONAL CENTER, HOMESTEAD, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HOMESTEAD, FLORIDA <br><br> Defendant. | Case No. 1:25-cv-24232 <br><br> **COMPLAINT** |

Plaintiff La Salle Educational Center, Homestead, Inc. ("La Salle"), by its attorneys Margolis PLLC and Storzer & Associates, P.C. (*pro hac vice admission* to be submitted), hereby complains of Defendant, City of Homestead, Florida ("City"), as follows:

**INTRODUCTION**

1. This action is commenced by La Salle to redress violations of its civil rights, as protected by the Free Exercise Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA"), the Florida Constitution, the Florida Religious Freedom Restoration Act ("FRFRA"), Florida Statutes Annotated §§ 761, *et seq.*, and Florida Statutes Annotated § 1002.42(19)(a), caused by the City's conduct that has interfered with La Salle's use of its property as a private religious school on a parcel of land located in the City at 13428 SW 314th Street, Homestead, Florida 33033 (the "Property"), part of what is known as the South Dade Center.

1

2.    La Salle is an educational organization affiliated with the La Salle District of Eastern North America ("DENA") community of the Institute of the Brothers of the Christian Schools of the Roman Catholic Church, and uses the Property that it leases from the Homestead Housing Authority Inc. ("HHA") for educational purposes, including since 2024 as a private religious school for children from low-income agricultural families in Kindergarten through Fourth Grade.

3.    Currently, La Salle provides Catholic religious school education for 28 children of low-income families at the South Dade Center.

4.    Despite La Salle having operated an educational facility on the Property since 1997, the City has refused to issue a corrected certificate of occupancy ("CO"), which would allow it to continue operations.

5.    In an error in its original 1997 Certificate of Occupancy, La Salle was mistakenly approved for Office use ("B" Use).  La Salle requires a corrected certificate of occupancy for Educational use ("E" use) from the City to obtain necessary licensing and funding from the State of Florida for its students.

6.    The lack of a CO has prevented La Salle from obtaining an inspection from the Florida Department of Health in Miami-Dade County, which is necessary for La Salle to receive funding known as the Step-Up scholarships, from the Florida Department of Education's Office of Independent Education and Parental Choice ("OIEPC"), as well as funding for meals provided by the U.S. Department of Agriculture National School Lunch Program.

7.    This will force La Salle to shut its religious school, as it will run out of funding by March 2026.  La Salle will be unable to provide, and its students will be unable to receive, the Catholic education currently being provided at the Property.

8.     Additionally, the City's zoning code permits nonreligious assembly and institutional uses, while not expressly permitting La Salle's religious school use.  However, pursuant to Florida Statutes Annotated § 1002.42(19)(a), La Salle is permitted to locate and operate on the Property as of right, without any zoning approval.  The City has discriminated against La Salle by refusing to issue it a CO.

9.     The City has further discriminated against La Salle by allowing other nonreligious assembly and institutional educational uses in the South Dade Center, which are subject to the same land use regulations, while refusing to provide a CO to La Salle.

10.     The City's laws and actions will prevent La Salle from engaging in its religious mission by operating its school, and will burden its religious exercise without the City's laws and actions being the least restrictive means of achieving a compelling governmental interest.

11.     La Salle seeks declaratory and injunctive relief, as well as compensatory damages for the City's willful violation of its civil and constitutional rights.

**PARTIES**

12.     Plaintiff LA SALLE EDUCATIONAL CENTER, HOMESTEAD, INC. is a not-for-profit corporation formed under the laws of the State of Florida on May 8, 1997 with a principal address of 13350 SW 314th Street, Homestead, Florida 33033.

13.     Defendant CITY OF HOMESTEAD, FLORIDA is a municipal corporation of the State of Florida, having offices at 100 Civic Court, Homestead, Florida 33030.

14.     The City is a "government" within the meaning of 42 U.S.C. § 2000cc-5(4)(A).

3

**JURISDICTION AND VENUE**

15.     The subject matter jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question jurisdiction) in that this action is brought under 42 U.S.C. §§ 2000cc, *et seq.*, and 42 U.S.C. § 1983.  This Court also has supplemental jurisdiction over Counts V through VIII under 28 U.S.C. § 1367(a) for La Salle's claims brought under Florida law as they arise from the same set of facts and circumstances as La Salle's federal claims and are part of the same case or controversy.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that all of the events giving rise to the claims herein occurred in this District and the Defendant is subject to personal jurisdiction in this District as of the commencement of this action.

**FACTUAL ALLEGATIONS**

17.     La Salle has been operating in Homestead, Florida, as a Catholic non-profit organization since 1997.

18.     Prior to its incorporation, La Salle existed as "Centro De Artes Y Oficios De La Salle" since 1989, starting a volunteer after-school program for local youth in 1991.  In its early years, the center was run by Lasallian alumni from Cuba, and Brothers and Sisters from Mexican Lasalle districts.

19.     La Salle has offered faith-based after-school and adult education programs since its establishment, in line with the tenets of its Lasallian educational mission.

20.     The primary purpose of La Salle is to provide educational services to low-income families from the South Dade area pursuant to the core tenets of the Lasallian charism in the Roman Catholic Church.

21. La Salle is part of the De La Salle Brothers (officially named the Institute of the Brothers of the Christian Schools), which is named after its founder John Baptist de La Salle and is a Catholic lay religious congregation of pontifical right.

22. La Salle was a priest who was moved by the plight of poor children unable to access education at a time where few families could afford to educate their children. LaSalle abandoned his wealthy upbringing and family home, and formed the community known as The Brothers of the Christian Schools.

23. La Salle was declared a saint by the Roman Catholic Church in 1900, before being named "Special Patron of All Teachers of Youth in the Catholic Church" in 1950.

24. The Lasallian charism of education began in 1680, originally called "Christian and Gratuitous Schools," run by its First Brothers to make education accessible to "the young, especially those who are impoverished and marginalized."

25. The first United States citizen to become a Christian Brother of the Lasallian charism was trained in the 1840s in Montreal, where the Lasallian charism first expanded to North America.

26. The first permanent Lasallian school in the United States, today known as Calvert Hall College High School, was established in Baltimore in 1845.

27. In the 1840s and 1850s, the Christian Brothers expanded their mission's reach to New York and Toronto, and by 1900 there were well-established schools and communities throughout the East Coast of North America.

28. By the 1950s, the Christian Brothers' novel approach of partnering with various lay partners led to even more schools opening, and smaller regions being combined into districts.

29. The Lasallian mission in North America is organized into Districts, responsible for administration, operations and educational programming across more than 60 ministries within at least twenty states, including Florida.

30. This includes the District of Eastern North America ("DENA"), the amalgamation of the historic Baltimore, Long Island-New England, and New York Districts.

31. DENA has its Provincialate, or headquarters in secular terms, in Eatontown, New Jersey.

32. Worldwide, there are over 35 Lasallian districts across five geographic regions, running nearly a thousand schools, with educational programs in over 80 countries, educating over a million students.

33. La Salle is a member of DENA and the worldwide Lasallian Mission.

34. The Lasallian mission is to provide human and Christian education for all, concerned first with the education of those whose dignity and human rights are not recognized and who are deprived of opportunity for personal development.

35. Lasallian schools nurture belief in the living presence of God, calling members to an awareness of the poor and victims of injustice, fostering an inclusive community where everyone may find a place by recognizing one another's strengths and limitations.

36. Five core principles are central to all Lasallian schools worldwide: faith in the presence of God, concern for the poor and social justice, respect for all persons, quality education, and inclusive community.

37. Brothers, with their lay partners, continue to run Lasallian schools "in communion with the Church, and above all, with those who share this same educational mission."

38. Catechesis, or Christian religious instruction, is the Lasallian Brothers' principal function, and this conviction determines their formation as well as the choice of tasks to which they may be assigned.

39. Recognizing a further need to aid communities of need, in the Summer of 2024, La Salle hired its first President and added a day school program for grades K-4 at the Property.

40. In their building located on the Property, La Salle offers a full-day K-4 school program serving 28 low-income students from the South Dade area as well as their after-school, adult educational, and community outreach programs.

41. Many of La Salle's students, both adult and child, do not read or write English and rely on La Salle for language classes.

42. The school day for the children consists of morning prayer service, then instruction in the Lasallian tradition described above.

43. The children celebrate Mass at the nearby Chapel of St. Ann's Mission on Fridays.

44. La Salle's after-school program is operated from 3 p.m. to 5 p.m. for fifteen K-8 children from the local community.

45. La Salle offers a farm share food distribution every Monday to needy families in the South Dade area.

46. La Salle also conducts a Thanksgiving food drive and Christmas toy drive for the local community every year.

47. La Salle offers, as part of its adult educational programming, fellowship classes for seniors.

48. La Salle offers weekend catechism classes in conjunction with Chapel of St. Ann's Mission.

49.     La Salle offers a Summer camp for the children of the community which has both religious and educational components, including a morning prayer session run by candidates contemplating religious life in the Lasallian mission.

**THE PROPERTY**

50.     The use of the Property is subject to the laws and regulations of the City, Miami-Dade County, and the State of Florida.

51.     The Property is located in the "GP" or "Government Property" zoning district of the City.

52.     Section 30-381 of The Code of the City of Homestead, Florida states: "Uses. The GP government property district is for property used by governmental agencies such as school boards, parks, public works, yards, housing authorities, etc."

53.     The Property is owned by the HHA.

54.     The HHA is a public body corporate and politic organized and existing under Florida Statutes Chapter 421.

55.     The purpose of the HHA is to provide "high quality, affordable, safe and sanitary housing of choice so that our clients and their families are able to elevate their quality of life with dignity."

56.     The HHA was established in 1950 and serves Miami-Dade County ("County") and certain cities.

57.     The HHA is funded by grants from the United States Departments of Housing and Agriculture.

58.     HHA owns certain real property in the City at the southeast corner of SW 312th Street and NE 43rd Avenue ("HHA Site"). The HHA Site consists of Lots 1 through 13 and Lot

28 in Block 2 in the Miami Land & Dev Cos Sub Sec 14 as appearing in Folio Number 10-7914-001-0040.

59.     Upon information and belief, HHA leases portions of the HHA Site to various private entities, including to La Salle, for nonreligious assembly and institutional land uses.

60.     These include Great Beginnings Private School Corporation ("GB"),  RCMA's Child Development Center, O.T. Wellness Therapy Solutions (an occupational therapist), Ezz Grocery store, Rubis D. Vergara Ramirez, NP (a family practice physician),  Three Virtues Organization (a food bank), and enFAMILIA, Inc. (an afterschool, art, sports, and family education center).

61.     In 1993, the HHA contacted La Salle's predecessor, De La Salle Alumni Association Inc., to determine whether it would be interested in leasing part of the HHA Site to provide training and educational programs in their farm labor housing near the South Dade Center.

62.     Some time thereafter, La Salle's predecessor took possession through a lease of a portion of the HHA Site to provide its after school and adult educational programs to area agricultural families.

63.     The lease has been renewed annually, most recently for the time period of June 1, 2025 through May 31, 2026, and states that La Salle's use of the Property is for Educational Services.

64.     La Salle's leased space consists of seven units located at the HHA Site, 4500 NE 8th Street.

65.     La Salle's leased space consists of a 2,446-square foot building, with four restrooms, two classrooms, storage space and patio areas.

66.     Florida law (specifically, F.S.A. § 1002.42(19)(a)) permits private religious schools such as La Salle to operate on the Property, as a property owned by an entity such as HHA, without zoning approval.

67.     Florida law provides that:

> A private school may use facilities on property owned or leased by a library, community service organization, museum, performing arts venue, theater, cinema, or church facility under s. 170.201, which is or was actively used as such within 5 years of any executed agreement with a private school to use the facilities; any facility or land owned by a Florida College System institution or university; any similar public institutional facilities; and any facility recently used to house a school or child care facility licensed under s. 402.305, under any such facility's preexisting zoning and land use designations without rezoning or obtaining a special exception or a land use change, and without complying with any mitigation requirements or conditions. The facility must be located on property used solely for purposes described in this paragraph, and must meet applicable state and local health, safety, and welfare laws, codes, and rules, including firesafety and building safety.

F.S.A. § 1002.42(19)(a) (emphasis added).

68.     HHA is a community service organization within the meaning of F.S.A. § 1002.42(19)(a).

69.     The HHA Site is also a public institutional facility within the meaning of F.S.A. § 1002.42(19)(a).

### THE CITY HAS REFUSED TO PROVIDE LA SALLE WITH A CERTIFICATE OF OCCUPANCY FOR ITS EDUCATIONAL USE

70.     La Salle serves the low-income community in the South Dade area, with La Salle located in an area called the South Dade Center.

71.     Enrollment at La Salle is limited to the children of the South Dade Center.

10

72.     The students attending La Salle come from low-income families and are in need of scholarships and financial assistance offered through the Florida Department of Education's Office of Independent Education and Parental Choice ("OIEPC").

73.     Additionally, many of La Salle's students do not read or write English when they first enroll at the school, and rely on La Salle's language instruction.

74.     All of La Salle's students are entitled to meals, a breakfast, lunch and snacks funded by the U.S. Department of Agriculture through the Federal School Lunch Program.  The funds have been allocated by the government, but have not been distributed to La Salle because the federal government also requires a current health department certificate from the Florida Department of Health in Miami-Dade County.

75.     To qualify for Florida state funding for its students, called "Step Up" scholarships, La Salle must submit scholarship compliance documents to OIEPC.

76.     This includes submitting a current health certificate from the Florida Department of Health in Miami-Dade County to OIEPC.

77.     To issue a current health certificate, the Florida Department of Health in Miami-Dade County must have in its possession a current certificate of occupancy for "E" (Educational) use for La Salle.

78.     Such certificate of occupancy would be issued by the City.

79.     Although La Salle has been in possession of a certificate of occupancy issued by the City since 1997 for its use of the Property, which should have been issued as an "E" use certificate, the existing certificate of occupancy for La Salle incorrectly states that the certificate of occupancy had been issued for an office or "B" use, rather than "E" use.

11

80.     The certificate of occupancy classification is based upon use of the Property.  Each occupancy classification has different requirements based upon the use involved.

81.     La Salle meets all of the requirements for issuance of a certificate of occupancy for "E" use of the Property, including building and fire safety.

82.     La Salle's longstanding lease agreement reflects that the use of the Property by La Salle was for educational programs, and longstanding public knowledge has been that La Salle provided such educational programs and services.

83.     However, in November of 2024, the City's Development Services Department informed La Salle that it must submit a "change of use" application to receive its corrected certificate of occupancy for "E" use.

84.     Contemporaneously, the City advised La Salle at an in-person meeting in November 2024 that it did not know of La Salle's existence.

85.     This is inaccurate, as La Salle was already in possession of a certificate of occupancy issued by the City's building department in 1997.

86.     On December 6, 2024, La Salle submitted plans signed by an engineer to the City's Development Services in response to a request made by Manuel Salazar, former Building official of the City's Development Services Department, that same day.

87.     On December 10, 2024, the City requested a revision of La Salle's plans to have them signed by an architect indicating that they satisfied "E" use occupancy requirements.

88.     On December 16, 2024, La Salle submitted an inquiry to the City from an architect who reviewed the submitted plans asking for a clarification to the City's request.

89.     On January 2, 2025, the City responded to the architect's inquiry and stated that they wanted new plans drawn by the architect or engineer that showed compliance with the Florida Building Code for educational use and indicating that a change of use permit would be needed.

90.     On February 3, 2025, La Salle submitted the requested plans drawn by the architect that showed compliance with the Florida Building Code for educational use to the City.

91.     In response to the submitted plans, the City asked if La Salle had applied for a change of use, even though no work was contemplated at the Property.

92.     In February of 2025, La Salle's leadership directly contacted the City's Mayor Steven D. Losner, Commissioner Clemente Canabal, and City Manager Nzeribe Ihekwaba, outlining in an email their ongoing concerns.

93.     On March 19, 2025, La Salle held a meeting with OIEPC to outline its concerns regarding the City's refusal to issue the Certificate of Occupancy.

94.     Subsequently, OIEPC contacted the Florida Department of Health ("DOH") to obtain the corrected certificate of occupancy, but, upon information and belief, was unsuccessful, receiving a zoning analysis instead.

95.     La Salle's facility met the Florida Building Code requirements for an "E" use, and this fact was communicated to the City by the Plaintiff by submission of plans signed and sealed by its architect in February 2025, and no work was needed to meet such specifications.

96.     On April 3, 2025, Alessandra Alvarez, a Zoning Associate with the City's Development Services Department, informed the Florida Department of Health in Miami-Dade County that La Salle's use was not permitted on the Property.

97.     Ms. Alvarez provided a "Zoning Analysis" of La Salle's use that stated:

> The subject property located **4500 NE 8th Street [i.e., Folio No. 10-7914-001-0040]** is zoned *Government Property (GP)* with a Future Land Use

Map (FLUM) designation of *Agricultural Use (AU)*, which are not consistent.  The existing buildings and uses at the City of Homestead Housing Authority site are deemed legally nonconforming.

## Zoning Analysis

- The subject parcel is also located <u>outside</u> the Uban [sic] Development Boundary (UDB) Line; therefore, no new projects cannot be developed at this time until an amendment to the land use to the Miami-Dade Couty [sic] Comprehensive Development Master Plan application has been filed by the applicant to the County for review.
- Pursuant to the City's latest Comprehensive Plan amendment, Policy 1.2 of the Comprehensive Plan, rezonings shall not involve "<u>spot zoning</u>."  Spot Zoning is defined as rezoning a lot or parcel of land to benefit an owner for a use incompatible with surrounding uses and not for the purpose or effect of furthering the comprehensive plan.
- Pursuant to City Code Section 30-381 *Uses*, the GP government property district is for property used by governmental agencies such as school boards, parks, public works, yards, housing authorities, etc.
- Agricultural Use (AU): Permitted uses include agriculture and related uses supportive of local-agricultural production, and residential use not to exceed one (1) dwelling unit per five (5) gross acres. This land use designation will be implemented through the AU (Agricultural) zoning district in the City's LDC.
- Pursuant to the City's latest Comprehensive Plan amendment, Policy 2.1 states the following: the Homestead FLUM will have the land use designations, and general development densities and intensities as specified below. *Specific uses and development densities and intensities are contained in the more detailed zoning districts which implement, <u>and must be consistent with</u>, these land use designations.*  Individual zoning districts are defined in the City's Land Development Code as amended from time to time.
- Per the attached Ordinance No. 2010-09-25, the subject parcel falls within the Homestead Air Reserve Base (HARB) Noise Zones 65 dBA and 70 dBA.  In addition, the subject parcel falls within the HARB Accident Potential (AZP) 1 and Clear Zone (CZ) which prohibits the uses of government and educational services.
- Pursuant to City Code Section 30-548(7) *Discontinued Nonconforming Use.* If a nonconforming use of a structure (or structure and land or water in combination) is discontinued for ninety (90) consecutive days, then such use shall be removed or converted to a conforming use. The intent of the owner in discontinuing the use shall not be considered.

14

98.     The City ultimately concluded:  "As a result, a proposed *new educational center* cannot be allowed at this site."  (Emphasis in original.)

99.     The City's "Zoning Analysis" contained substantial misinformation and inaccuracies.

100.    The City nevertheless determined that La Salle's school was not permitted under the applicable land use regulations.

101.    Pursuant to F.S.A. § 1002.42(19)(a), La Salle is exempt from zoning regulations, and has informed the City of this fact.

102.    On April 16, 2025, La Salle submitted an application for a permit for "change of use" to the City, in order to obtain a CO as per the instructions from the City.

103.    In furtherance of the change of use application, La Salle, at the City's request, had submitted architectural plans and a current fire inspection certificate to the City's Development Services Department with its application for change of use.

104.    On April 24, 2025, La Salle received notification that its Change of Use application was denied.

105.    Upon asking for review or correction, on May 5, 2025, La Salle was made aware that Mr. Salazar was no longer employed by the City and the City's new Director of Development Services was Derrick Cook.

106.    Additionally, on May 5, 2025 the City's Development Services office held a meeting with La Salle and promised to review the matter.

107.    La Salle's President visited the City's Development Services office numerous times in the months of May and June 2025, meeting with Mr. Cook, requesting updates on the City's review.

15

108.    On July 16, 2025, the City then informed La Salle that it would process the change of use application for issuance of the corrected Certificate of Occupancy for "E" use upon two conditions.

109.    The first condition was that La Salle provide proof that it complied with the Florida Building Code 2023 for "E" use of its school.

110.    The second condition was that the Property be retrofitted to comply with Federal Aviation Administration Advisory Circular ("AC 150") noise attenuation guidelines due to its proximity to Homestead Air Reserve Base.

111.    These conditions were imposed despite the Property being used continuously since 1997 by La Salle for its educational programs and services.

112.    After informing the City that it met its two conditions on July 17, 2025, the City continued to refuse to provide La Salle with a CO.

113.    On July 24, 2025, in response to the City's request, La Salle's attorney provided a memorandum of law with proof to the City that it was not located in the HARB crash zone, the local noise ordinance was not applicable, and that it qualified for a CO under Florida Statute 1002.42(19)(a).

114.    The City had already been provided with signed architectural plans demonstrating compliance with the Florida Building Code for an "E" use on February 3, 2025.

115.    The Property meets the Federal Aviation Administration AC 150 noise attenuation guidelines, and this was communicated to the City on July 31, 2025.

116.    The Property is outside the accident and noise zones for Homestead Air Reserve Base, based upon a study conducted by the United States Air Force.

16

117. Despite being outside the accident and noise zones for Homestead Air Reserve Base, in order to satisfy the City, La Salle hired a third-party company to conduct an acoustical study to determine the interior noise level of the Property.

118. La Salle had informed the City about its commissioning of this study, despite there being no regulatory basis for doing so.

119. The acoustical study determined that the Property satisfies the Federal Aviation Administration AC 150 noise attenuation guidelines of interior Equivalent Continuous Sound level (Leq) of 65 dBA during a typical school day and an interior Day-Night Average Sound Level (Ldn) of 65 or less.

120. On August 29, 2025, the City held a meeting with La Salle where the City asked for more time to research the applicability of F.S.A. § 1002.42(19)(a) and La Salle's continued use.

121. During that meeting, La Salle informed the City that its continued delay jeopardizes the operation of La Salle's school as the OIEPC-imposed funding deadline is October 1, 2025.

122. On September 9, 2025, the City informed La Salle that the City was in agreement that the HHA is classified as a "community service organization" pursuant to F.S.A. § 1002.42(19)(a).

123. La Salle may utilize the Property for the operation of a private school pursuant to F.S.A. § 1002.42(19)(a) since HHA is a community service organization.

124. However, prior to the issuance of the requested corrected certificate of occupancy for "E" use, on September 12, 2025, the City stated that, prior to the issuance of the requested corrected certificate of occupancy for "E" use, it must receive confirmation from Miami-Dade

17

County that issuance of the corrected certificate of occupancy "will not violate the terms and conditions set forth within the 1996 Annexation Interlocal Agreement ("ILA") with the County."

125. As of September 16, 2025, the City has not responded to La Salle's inquiry as to whether the City has received said confirmation from the County.

126. The City stated that the ILA "specifically regulates property within the annexed area lying outside the Urban Development Boundary ("UDB") line, inclusive of the HHA Site. Moreover, the 1996 ILA requires application of the County's Comprehensive Plan and Zoning Code for a minimum thirty (30) year term."

127. Regardless of the County's Comprehensive Plan and Zoning Code and the requirements of the ILA, such regulation is pre-empted by State law as described above.

128. Upon information and belief, such a requirement was not imposed on other educational, assembly and institutional uses on the HHA Site.

129. Upon information and belief, the City has granted COs to other educational, assembly and institutional uses on the HHA Site notwithstanding the ILA.

130. On September 12, 2025 in an email sent to the City's representatives, among others, La Salle requested issuance of a temporary certificate of occupancy.

131. La Salle has complied with all applicable state and local health, safety, and welfare laws, codes, and rules, including fire safety and building safety, in accordance with F.S.A. § 1002.42(19)(a) to entitle it to receive the corrected Certificate of Occupancy for "E" use for La Salle at the Property from the City and has informed the City of this fact.

132. To date, the City has refused to issue the corrected Certificate of Occupancy for "E" use for La Salle at the Property despite being requested to do so by La Salle.

## LA SALLE'S SCHOOL WILL BE FORCED TO CLOSE
## BECAUSE OF THE CITY'S ACTIONS

133.	As of the date of the filing of this Complaint, La Salle currently has funding to continue to provide its K-4 religious educational program to its students for the beginning of the 2025-26 academic year.

134.	However, La Salle is dependent upon receiving the Step Up scholarship funding in order to continue to operate past the end of 2025.

135.	OIEPC has indicated that it must receive the scholarship compliance forms, which include the certificate from the Florida Department of Health in Miami-Dade County, no later than October 1, 2025, in order for La Salle to receive state funding for the 2025-26 school year.

136.	La Salle cannot receive the state funding for its students' Step Up scholarships until its corrected certificate of occupancy for "E" use is issued by the City, so that it can obtain a current health certificate from the Florida Department of Health in Miami-Dade County.

137.	All of La Salle's students are also entitled to receive meals, including a school breakfast, school lunch and a snack, funded by the U.S. Department of Agriculture.  These funds have not been distributed to La Salle because the federal government also requires a current health department certificate from the Florida Department of Health in Miami-Dade County.

138.	La Salle's school operation will not be able to continue to operate beyond the Fall semester of 2025 without the state funding, and La Salle will have to close its school at the end of the Fall semester if it does not receive this funding.

139.	The state funding that La Salle will receive is used to pay the teachers and administrative salaries, purchase textbooks and other educational materials for the low-income students, to purchase facility equipment and materials to support the educational mission, and any other acquisitions necessary to facilitate the operation of its school.

140. La Salle has been forced to use the remainder of its own funds to cover these expenses until it receives the state funding.

141. La Salle will run out of funds for this purpose following this Semester.

142. La Salle also cannot receive the federal funds for the meals and snacks it serves its students until it provides a certificate from the Florida Department of Health in Miami-Dade County to the federal government, which is also dependent upon the City providing a corrected certificate of occupancy for "E" use.

143. The City is well aware that its failure to issue the corrected Certificate of Occupancy will result in La Salle having to cease operating its school.

**THE CITY'S AND COUNTY'S ZONING CODES AND THE CITY'S REGULATION OF LA SALLE TREAT IT ON LESS THAN EQUAL TERMS AS NONRELIGIOUS EDUCATIONAL USES**

144. The City regulates zoning within its borders through its "Chapter 30" of The Code of the City of Homestead, Florida ("Code").

145. The Code sections described herein are "land use regulations" within the meaning of 42 U.S.C. § 2000cc-5(5).

146. Pursuant to the City's Code, "[t]he GP government property district is for property used by governmental agencies such as school boards, parks, public works, yards, housing authorities, etc."  (Emphasis added.)

147. Public schools, which are operated by school boards, are therefore permitted by right in the GP zoning district and therefore on the Property.

148. Similarly, the County's land use regulations also treat public schools more favorably than private schools.

149. Sections 33-151.11 through 33-151.22 of the Code of Metropolitan Dade County,

20

Florida treat religious schools on less than equal terms as public schools.

150.    For example, section 33-151.12.1(a) of the Code of Metropolitan Dade County, Florida states that "New <u>private</u> elementary, junior and senior high schools, private college, universities and non-agricultural trade schools as well as the expansion of such existing facilities shall be prohibited on sites located outside the Urban Development Boundary (UDB)." (Emphasis added.)

151.    The Property is located outside the UDB.

152.    In the context of their own ongoing issues, La Salle through its attorney submitted a request to the City for information on two other schools located in the South Dade Center.

153.    Two other nonreligious private schools, Great Beginnings Private School Corporation (d/b/a Great Beginnings Private School) ("GB") and Redlands Christian Migrant Association's Child Development Center ("RCMA") also operate on the same HHA Site where La Salle is located.

154.    Upon information and belief, GB was established in 2017 on property it leases from HHA at 31220 SW 134 Avenue and is a non-religious, co-education school.

155.    Upon information and belief, GB school currently serves as a private school for grades K-10.

156.    Upon information and belief, RCMA is a non-profit and non-sectarian organization, and was founded in 1965 to provide childcare and education to South Florida's farm workers' children.

157.    Upon information and belief, neither GB nor RCMA provide a religious education to the children they serve.

21

158. Upon information and belief, GB and RCMA have executed leases with HHA to use portions of its property for educational purposes.

159. Upon information and belief, neither GB nor RCMA have had to apply for any zoning approvals to operate educational uses.

160. Upon information and belief, GB and RCMA have both been issued a Certificate of Occupancy for "E" use of the Property for their educational uses.

161. Upon information and belief, the City issued a temporary certificate of occupancy for "E" use to Great Beginnings in 2019.

162. La Salle has requested that in the event the City cannot issue a permanent certificate of occupancy for "E" use at this time, that the City issue it a temporary certificate of occupancy for "E" use.

163. The City has refused to issue a temporary or permanent certificate of occupancy for "E" use to La Salle.

164. Denying a certificate of occupancy dependent upon zoning approval is the application of a zoning law that limits or restricts the use of land within the meaning of 42 U.S.C. § 2000cc-5(5).

165. The City's Code, and the City's implementation of the County's Code discriminates against La Salle's use and in favor of the various other nonreligious assembly and institutional uses including public schools and two nonreligious educational uses.

166. La Salle had a reasonable expectation that its use would be permitted on the Property.

167. The City's actions in failing to issue a corrected Certificate of Occupancy for "E" use severely impedes and prevents La Salle's religious exercise.

168. The City has engaged in an individualized assessment of the use of the Property by failing to issue the corrected Certificate of Occupancy for "E" use.

169. La Salle's activities affect interstate commerce. The school's current and future effects on interstate commerce result from, among other things, La Salle's fundraising activities related to the school; the transfer of funds to those it engages to assist with operation of the school; the engagement of companies to assist with operation of the school; the employment of and payments to employees and others either by La Salle or by companies engaged by it; the purchase of necessary materials for the operation of the school; the use of interstate highways for the transportation of persons and materials used for the operation of the school; the use of interstate communication related to the operation of the school; and other activities related to the operation of the school.

170. The substantial burden upon La Salle's religious exercise has been imposed in a program or activity that receives Federal financial assistance.

171. The City's actions described above all took place under color of state law.

172. The harm to La Salle caused by the City's laws and actions, which prevent it from using the Property to accommodate its religious needs, is immediate and severe.

173. Application of the Code to La Salle's proposed religious land use creates extreme expense, delay and uncertainty for La Salle.

174. La Salle has also suffered significant financial damages as a result of the City's laws and their application to La Salle.

175. There are no quick, reliable, and viable alternative options for La Salle's operations.

176. La Salle has no adequate remedy at law for the harm and damage caused by the City's wrongful laws and actions.

## COUNT I

**Religious Land Use and Institutionalized Persons Act of 2000**
**"Substantial Burdens"**
**42  U.S.C. § 2000cc(a)**

177.    Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

178.    By refusing to issue a corrected Certificate of Occupancy for "E" use to the Plaintiff, the Defendant has deprived and continues to deprive the Plaintiff of its right to the free exercise of religion, as secured by RLUIPA.

179.    The Defendant is a "government" within the meaning of RLUIPA.

180.    Plaintiff's operation of its religious school is "religious exercise" within the meaning of RLUIPA.

181.    Defendant has engaged in the implementation or imposition of land use regulations within the meaning of RLUIPA in a manner that substantially burdens Plaintiff's religious exercise.

182.    The substantial burden on Plaintiff's religious exercise was not implemented or imposed in furtherance of a compelling governmental interest.

183.    Even assuming that Defendant has burdened Plaintiff's religious exercise in furtherance of a compelling governmental interest, such burden was not the least restrictive means of achieving a compelling governmental interest.

184.    Plaintiff has been damaged as a result of the Defendant's actions, including the ongoing burden on its religious exercise, as secured by RLUIPA, and monetary damages.

## COUNT II

**Violation of Religious Land Use and Institutionalized Persons Act of 2000**
**"Equal terms"**
**42 U.S.C. § 2000cc(b)(1)**

185. Paragraphs 1 through 176 are incorporated by reference as if fully set forth herein.

186. Defendant has imposed land use regulations that, on their face, treat religious uses on less than equal terms with nonreligious uses.

187. Defendant has implemented land use regulations in a manner that treat Plaintiff on less than equal terms with nonreligious uses.

188. Further, by failing to issue a Corrected Certificate of Occupancy for "E" use to the Plaintiff by conditioning the same upon obtaining County zoning approval, while Defendant has issued a Certificate of Occupancy for "E" use without conditioning the same upon County zoning approval to similarly situated secular educational institutions, Defendant has implemented and imposed land use regulations in a manner that treat Plaintiff on less than equal terms with nonreligious uses.

189. These nonreligious uses are similarly situated with respect to all relevant land use criteria.

190. The Plaintiff has been damaged as a result of Defendant's actions, including the ongoing burden on its religious exercise, as secured by RLUIPA, and monetary damages.

## COUNT III

**United States Constitution, First Amendment**
**42 U.S.C. § 1983**
**Free Exercise of Religion**

191. Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

192.    Defendant's individualized action in failing to issue a corrected Certificate of Occupancy for "E" use for the Property was not a neutral law of general applicability.

193.    The City's actions described above burden Plaintiff's religious exercise.

194.    Defendant has placed significant pressure on Plaintiff to conform its behavior, including modifying or foregoing its religious precepts, which significantly hampers Plaintiff's religious mission.

195.    Defendant was at all relevant times acting under color of state law.

196.    Defendant's actions in failing to issue a corrected Certificate of Occupancy for "E" use for the Property were made pursuant to a system of individualized assessments.

197.    The City's actions described above were not the least restrictive means of advancing a compelling governmental interest.

198.    Plaintiff has been damaged as a result of Defendant's actions, including the ongoing burden to its constitutional rights, and monetary damages.

## COUNT IV

### United States Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983
### Equal Protection of the Laws

199.    Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

200.    The City's actions in failing to issue a corrected Certificate of Occupancy for "E" use for the Property have deprived and continue to deprive Plaintiff of its right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by discriminating against the Plaintiff on the basis of religion.

201.    Defendant has issued a Certificate of occupancy for "E" use to other similarly situated secular educational entities.

26

202. The Defendant acted with discriminatory intent in engaging in the actions as aforesaid.

203. Plaintiff has been damaged as a result of Defendant's actions, including the ongoing burden to its constitutional rights, and monetary damages.

## COUNT V

**Florida Religious Freedom Restoration Act ("FRFRA")**
**Florida Statutes Annotated §§ 761, *et seq.***

204. Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

205. Defendant is a "government" within the meaning of the FRFRA.

206. Plaintiff's religious needs are "religious exercise" within the meaning of the FRFRA.

207. By refusing to issue a corrected certificate of occupancy for "E" use of the Property and by treating religious land uses on terms that are less than equal to nonreligious assembly and institutional land uses, the Defendant has substantially burdened Plaintiff's freedom of religion without using the least restrictive means of achieving a compelling governmental interest.

208. By refusing to issue a corrected certificate of occupancy for "E" use of the Property, Defendant departed from the essential requirements of law.

209. La Salle has been damaged as a result of Defendant's actions, including the ongoing burden to its civil rights, as secured by the FRFRA, and monetary damages.

## COUNT VI

**Article I, Section 3, Florida Constitution**
**Religious Freedom**

210. Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

211. Article I, Section 3, of the Florida Constitution provides:

Religious freedom.—There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety.

212.    By refusing to issue a corrected certificate of occupancy for "E" use of the Property and by treating religious land uses on terms that are less than equal to nonreligious assembly and institutional land uses, Defendant has deprived and continues to deprive Plaintiff of its right to freedom of religion, as secured by the Article I, Section 3 of the Florida Constitution, by undertaking actions and imposing and implementing land use regulations both on their face and as applied in a manner that places a burden on Plaintiff's freedom of religion without using the least restrictive means of achieving a compelling governmental interest.

213.    By refusing to issue a corrected certificate of occupancy for "E" use of the Property and by treating religious land uses on terms that are less than equal to nonreligious assembly and institutional land uses in violation of Article I, Section 3 of the Florida Constitution, Defendant has departed from the essential requirements of law.

214.    Plaintiff has been damaged as a result of Defendant's actions, including the ongoing burden to its Florida constitutional rights, and monetary damages.

## COUNT VII

**Declaratory Judgment**
**28 U.S.C. § 2201**

215.    Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

216.    Plaintiff is a private school within the meaning of Florida Statutes Annotated § 1002.42(19)(a).

217.    Florida Statutes Annotated § 1002.42(19)(a) permits Plaintiff to utilize the Property for the operation of a private school if HHA is a community service organization and the HHA Site has been utilized as such for a period of at least five years.

218.    HHA is classified as a "community service organization" pursuant to Florida Statutes Annotated § 1002.42(19)(a).

219.    HHA has been the owner of the HHA Site for at least twenty five (25) years.

220.    Plaintiff meets all applicable state and local health, safety, and welfare laws, codes, and rules, including fire safety and building safety.

221.    Plaintiff is entitled to a declaratory judgment that it may utilize the Property as a school without the necessity of seeking any zoning approval pursuant to F.S.A. § 1002.42(19)(a).

222.    Plaintiff is entitled to a declaratory judgment that it may utilize the Property as a school without under the Property's preexisting zoning and land use designations without rezoning or obtaining a special exception or a land use change, and without complying with any mitigation requirements or conditions.

## COUNT VIII

### Mandamus

223.    Paragraphs 1 through 176 are incorporated by reference as if set forth fully herein.

224.    Plaintiff is a private school within the meaning of Florida Statutes Annotated § 1002.42(19)(a).

225.    Florida Statutes Annotated § 1002.42(19)(a) permits Plaintiff to utilize the Property for the operation of a private school if HHA is a community service organization and the HHA Site has been utilized as such for a period of at least five years.

29

226. HHA is classified as a "community service organization" pursuant to Florida Statutes Annotated § 1002.42(19)(a).

227. HHA has been the owner of the HHA Site for at least twenty-five (25) years.

228. Plaintiff meets all applicable state and local health, safety, and welfare laws, codes, and rules, including fire safety and building safety.

229. The Defendant has a legal duty to issue the corrected Certificate of Occupancy for "E" use to Plaintiff pursuant to F.S.A. § 1002.42(19)(a), as the same cannot be conditioned upon obtaining zoning approval.

230. The Defendant's legal duty is ministerial and not discretionary as state law preempts the exercise of the Defendant's discretion with respect to this matter.

231. Plaintiff does not have any adequate remedy at law for its injury and mandamus relief must be afforded Plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests that this Court grant the following relief:

a. Preliminary and Permanent orders directing the Defendant to issue a corrected permanent certificate of occupancy for "E" use of the Property or, in the alternative, a corrected temporary certificate of occupancy for "E" use of the Property;

b. Preliminary and permanent orders enjoining the Defendant, its officers, employees, agents, successors and all others acting in concert with them from applying its laws in a manner that violates the Free Exercise Clause of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution, RLUIPA, and state law, or undertaking any and all action in furtherance of these acts;

c.  A Declaration that the Plaintiff may utilize the Property as a school without the necessity of seeking any zoning approval, rezoning or obtaining a special exception or a land use change, and without complying with any mitigation requirements or conditions and without any interference from the Defendant pursuant to F.S.A. § 1002.42(19)(a);

d.  Issuance of a writ of mandamus issue compelling the Defendant to issue a corrected Certificate of Occupancy for "E" use to the Plaintiff;

e.  An award of compensatory damages against Defendant in favor of the Plaintiff as the Court deems just for the loss of its rights under the First and Fourteenth Amendments to the United States Constitution and RLUIPA incurred by the Plaintiff and caused by the Defendant's laws and actions;

f.  An award to the Plaintiff of full costs and attorneys' fees arising out of Defendant's actions, land use decisions and out of this litigation; and

g.  Such other and further relief as this Court may deem just and appropriate.

Dated: September 16, 2025

**MARGOLIS PLLC**

/s/ Matthew Margolis
Matthew Margolis, Esq. (#1002501)
700 S Rosemary Ave #204,
West Palm Beach, FL 33401
Tel: (561) 203-9643
matthew@margolispllc.com

**STORZER & ASSOCIATES, P.C.**
Roman P. Storzer, Esq. (motion for admission *pro hac vice* forthcoming)
Eric W. Treene, Esq. (motion for admission *pro hac vice* forthcoming)
1025 Connecticut Avenue
Suite One Thousand
Washington, D.C. 20036
Tel: (202) 857-9766
Fax: (202) 315-3996
storzer@storzerlaw.com
treene@storzerlaw.com

*Attorneys for Plaintiff*

32