UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-24232-KMM

LA SALLE EDUCATIONAL CENTER,
HOMESTEAD, INC.,

    Plaintiff,

v.

CITY OF HOMESTEAD, FLORIDA,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court upon the Emergency Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 of the Federal Rules of Civil Procedure filed by Plaintiff La Salle Educational Center, Homestead, Inc. ("La Salle"). ("Motion" or "Mot.") (ECF No. 11). Therein, pursuant to Federal Rule of Civil Procedure 65, and on an emergency basis, La Salle seeks a temporary restraining order and a preliminary injunction against Defendant City of Homestead, Florida (the "City").[1] *See generally* Mot. La Salle seeks various relief relating to a permitting dispute with the City, including requiring the City to issue a temporary certificate of occupancy and enjoining it from applying its laws in a manner that La Salle contends is unconstitutional. *See generally id.*

**I.    BACKGROUND**

On September 16, 2025, La Salle initiated this action against the City, alleging violations of the Religious Land Use and Institutionalized Persons Act of 2000 (the "RLUIPA") for a

---

[1] Although La Salle certified that it provided notice of the Motion and accompanying filings to the City, as of the time and date of this Order, the City has not appeared or responded.

substantial burden placed on La Salle's religious exercise under Count I and unequal treatment of religious and non-religious uses under Count II, of the First Amendment's guarantee of free exercise of religion under Count III, of the Fourteenth Amendment's guarantee of equal protection under Count IV, of the Florida Religious Freedom Restoration Act under Count V, and of the Florida Constitution's guarantee of religious freedom under Count VI, as well as declaratory judgment under Count VII and mandamus under Count VIII. *See* (ECF No. 1) ("Compl.") ¶¶ 177–221. La Salle is an educational organization that leases a property from the Homestead Housing Authority Inc. ("HHA") at the South Dade Center for educational purposes (the "Property"), where it has operated an educational facility since 1997 and since 2024 a private religious school for low-income agricultural families, many of whom do not read or write English, serving Kindergarten through Fourth Grade. *Id.* ¶¶ 2–4, 20, 39–42. La Salle also runs an after-school program for fifteen children from Kindergarten through Eighth Grade ages, as well as a farm share food distribution service weekly. *Id.* ¶¶ 44–45. There is also a summer camp and a variety of special programming including for adults around the holidays and for particular religious services. *Id.* ¶¶ 46–49.

La Salle argues that it meets all the requirements of a Certificate of Occupancy (a "Certificate") for Educational use ("E" use), including building and fire safety, and that its existing lease agreement states an educational purpose and that its educational operations were public knowledge. *Id.* ¶¶ 80–82. In the original 1997 Certificate, La Salle contends that it was mistakenly issued a Certificate for Office use, but it needs a Certificate for "E" use from the City "to obtain necessary licensing and funding from the State of Florida for its students" as well as federal funding. *Id.* ¶¶ 4–5, 76–80. The present issue arose in November of 2024, when the City's Development Services Department required La Salle to submit a "change of use" application to receive a corrected Certificate for "E" use, and in an in-person meeting at that time the City stated

that "it did not know of La Salle's existence," which La Salle alleges is false because the erroneous Certificate had been issued by the City in 1997. *Id.* ¶¶ 83–85. On December 6, 2024, La Salle received a request from the City to submit plans signed by an engineer to the Development Services Department, which La Salle did that day. *Id.* ¶ 86. On December 10, 2024, the City requested revised plans, this time signed by an architect, indicating satisfaction of "E" use occupancy requirements, and after some back and forth on February 3, 2025 La Salle submitted new plans drawn by an architect that showed compliance with "E" use. *Id.* ¶¶ 87–90, 95.

The City still insisted on La Salle applying for a change of use as initially requested, and in the following months La Salle's leadership corresponded and met with various representatives of the City seeking to address the lack of Certificate issued. *Id.* ¶¶ 91–93. The Florida Department of Education's Office of Independent Education and Parental Choice ("OIEPC") contacted the Florida Department of Health ("DOH") in an unsuccessful attempt to obtain the corrected Certificate, and finally on April 3, 2025, the Development Services Department informed the DOH that La Salle's use was not permitted. *Id.* ¶¶ 94–96. La Salle disputes the accuracy of the zoning analysis that led to this denial. *Id.* ¶¶ 97–100. Later that month, La Salle submitted a change of use application to obtain a new Certificate, including existing architectural plans and fire inspection certificate, but on April 24, 2025, La Salle was informed that its application was denied. *Id.* ¶¶ 101–04. La Salle sought reconsideration, and throughout the summer its leadership met with the Development Services Department various times culminating in the City's indication on July 16, 2025 that it would process the change of use application on the condition that: (1) La Salle provide proof of compliance with Florida Building Code 2023 for "E" use; and (2) the Property be retrofitted to comply with Federal Aviation Administration Advisory Circular ("AC 150") noise attenuation guidelines. *Id.* ¶¶ 105–10. While disputing that these conditions were

properly imposed, La Salle nevertheless informed the City on July 17, 2025 of its compliance with these requirements but the City allegedly continued to refuse to issue a Certificate. *Id.* ¶¶ 111–19.

On August 29, 2025, the City requested more time to research the legal requirements of La Salle's use, and La Salle raised at that meeting that the continued delay jeopardized the operation of its school as the deadline for OIEPC funding is October 1, 2025. *Id.* ¶¶ 120–21. On September 9, 2025, the City indicated that it agreed that the HHA is classified such that La Salle may use the Property for a private school within the meaning of the applicable zoning regulations, but that a Certificate for "E" use will not be issued unless Miami-Dade County (the "County") confirms that the Certificate "will not violate the terms and conditions set forth within the 1996 Annexation Interlocal Agreement ('ILA') with the County." *Id.* ¶¶ 122–24. As of the date of the Complaint, the City had not responded to La Salle's inquiry as to whether the County had provided this confirmation, and La Salle disputes that such confirmation is even required. *Id.* ¶¶ 125–29. Due to this delay, La Salle requested issuance of a temporary Certificate on September 12, 2025, but no such Certificate has been issued. *Id.* ¶¶ 130–32. Without being approved for E use, La Salle cannot obtain an inspection from the Miami-Dade County Florida Department of Health, which is required for it to receive funding from OIEPC and the U.S. Department of Agriculture National School Lunch Program, and will be forced to close. *Id.* ¶¶ 6–7, 70–75, 133–43.

La Salle alleges that although its use of the Property as a religious school is not expressly permitted by the City's zoning code, which permits nonreligious assembly and institutional uses, La Salle has a statutory right to operate on the Property without any zoning approval pursuant to Fla. Stat. § 1002.42(19)(a). Compl. ¶¶ 8, 50–69. Per the Code of the City of Homestead Section 30-381, the Property is in the government property zoning district in an area properly owned by the HHA, which is a public entity, and the HHA leases parts of its area to private institutions

including various schools, an occupational therapy center, a grocery store, a family practice physician, a food bank, and an afterschool, art, sports, and family education center. *Id.* ¶¶ 51–54, 58–60.  Because other nonreligious assembly and institutional educational uses are permitted in the South Dade Center, which are allegedly governed by the same zoning restrictions, La Salle alleges that the City discriminated against it in refusing to issue a Certificate despite allowing these other uses. *Id.* ¶¶ 8–9, 144–70.  La Salle seeks declaratory and injunctive relief as to its rights on the Property, as well as compensatory damages for the City's refusal to issue a Certificate to date. *Id.* ¶¶ 10–11.  The foregoing is more fully laid out in the Declaration of Michael Scaramuzzo II (ECF No. 13), who is the President of La Salle.

Now, La Salle seeks a TRO and preliminary injunction on an emergency basis because it will "forfeit its right to funding from the State of Florida and the United States in the form of scholarship funds and Department of Agriculture meals necessary to keep its school in operation if the Certificate of Occupancy for 'E' use is not issued by [the City] prior to September 26, 2025 to enable [La Salle] to arrange for an inspection by and obtain a certificate from the [DOH] by September 26, 2025."  (ECF No. 11) at 2.  La Salle contends that the City made "repeated representations" that it would issue a Certificate, but that this has not occurred as of September 23, 2025 when the Motion was filed, and that late in the day on September 19, 2025, the City informed La Salle's counsel that in fact new plans must be submitted and that La Salle must apply for a phased permit, which cannot be accomplished by the deadline. *Id.*; *see generally* Declaration of Matthew Margolis (ECF No. 12).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(b), the Court may enter a temporary restraining order.  Fed. R. Civ. P. 65(b).  Temporary restraining orders are "meant to preserve the

status quo until a preliminary injunction hearing is held." *Mayoral v. Salin*, No. 1:21-cv-52074, 2021 WL 4804525, at *2 (S.D. Fla. Oct. 14, 2021). To obtain a temporary restraining order, a party must generally demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted).

## III.   DISCUSSION

Given that the Motion was filed less than three full days prior to the impending deadline of September 26, 2025 to receive a Certificate and obtain a DOH inspection and certificate, the Court will only address the temporary restraining order herein and defer adjudication of the request for a preliminary injunction to allow time for La Salle to be heard and for the City to respond. After reviewing the record evidence and declarations, the Court finds that La Salle has made a sufficient showing to warrant the entry of a temporary restraining order on an emergency basis. The Court addresses each of the requirements for a temporary restraining order in turn.

### A.  Likelihood of Success on the Merits

La Salle has demonstrated a substantial likelihood of success on the merits. The Court addresses the Counts in turn.[2]

#### 1.  The RLUIPA Claims

The RLUIPA states that no "government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a

---

[2] La Salle only offers argumentation as to its likelihood of success on the merits as to certain of the Complaint's Counts. The Court only addresses the claims on which La Salle offered argumentation.

6

religious assembly or institution, unless that government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling interest; and (B) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc(a)(1).  The City is a "government" within the meaning of the statute, and La Salle properly has standing under the same because there is an applicable land use regulation that "limits or restricts" its "use or development" of land over which it has a lease involving federal funding, affecting interstate commerce in its operations and employment, and based on individualized assessments of its proposed use.  *Id.* §§ 2000cc(a)(2), 2000cc-5(5).  "Religious exercise" under the RLUIPA includes the "use, building, or conversion of real property for the purpose of religious exercise."  *Id.* § 2000cc5(7)(B).  The RLUIPA also states that no "government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  *Id.* § 2000cc(b)(1).

As relevant to Count I, "substantial burden" has been held to mean "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).  The factors to determine whether there is a substantial burden include the genuine need for space, deprivation of ability to engage in religious exercise, meaningful nexus between the religious exercise and conduct impeded by the government action, arbitrary decision-making, the finality of the decision, and whether the burden is attributable to the government.  *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, 980 F.3d 821, 831–32 (11th Cir. 2020).  La Salle has made a *prima facie* showing of all of these factors, especially given the continually changing goalposts and new hoops that were communicated to La Salle, and to date the City has not provided a compelling reason supporting its denial of La Salle's application or refusal to issue a Certificate.  *See* (ECF Nos. 12,

12-1). The only factor that is weaker is whether this was a final decision, but as La Salle notes due to the impending deadline to receive state and federal funding, the City's decision will de facto be final once the deadline passes and neither the City nor the County has indicated any intention to act before then or provided La Salle with further steps to take. Mot. at 10–11. This is an adequate *prima facie* showing as to the alleged violation of the RLUIPA.

As relevant to Count II, an equal terms violation occurs if a statute "facially differentiates between religious and nonreligious assemblies or institutions," a facially neutral statute places a burden "solely on religious" assemblies or institutions, or a neutral statute is "selectively enforced against" religious assemblies or institutions. *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1308 (11th Cir. 2006). La Salle argues that the City's zoning statute is facially discriminatory by allowing government property zoning districts to include non-religious public "school boards" among other functions, but a private religious school is not allowed. Mot. at 15–16. La Salle also separately argues that even if the statute were facially neutral, it is discriminatory as applied because it is selectively enforced against La Salle but not against two nonreligious educational institutions operating in South Dade Center. *Id.* at 17. These are both adequate *prima facie* showings as to this independent violation of the RLUIPA.

**2. First Amendment Claim**

La Salle contends that the City's statute violates the First Amendment's guaranteed right to free exercise of religion.[3] Mot. at 12–14. The Supreme Court has explained that a law may violate this guaranteed right if it is not "generally applicable" in that "it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized

---

[3] Although the Motion references the free exercise of religion under Count IV, based on the Complaint it appears this argument corresponds to Count III.

exemptions." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (cleaned up and citation omitted). This analysis does not require the same substantiality as under the RLUIPA, and is properly applied to land use regulations including zoning that rely on individualized assessments. *Thai Meditation Ass'n*, 980 F.3d at 828 n.4, 833; *Hollywood Community Synagogue, Inc. v. City of Hollywood*, 430 F. Supp. 2d 1296, 1317 (S.D. Fla. 2006). For the reasons discussed above regarding the RLUIPA, and even more so without the requirement of substantiality, La Salle has made a *prima facie* showing as to its First Amendment claim.

Accordingly, the Court finds that La Salle has adequately shown substantial likelihood of success on the merits as to Counts I through III.

### B. Irreparable Injury

An irreparable injury occurs where monetary relief cannot redress it after the fact. *Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991). That La Salle may lose its government funding and be forced to close if it cannot meet the October 1, 2025 deadline is the type of harm that has been held to be irreparable in similar cases. *See, e.g.*, *Edward Waters College, Inc. v. S. Ass'n of Colleges & Schools, Inc.*, No. 3:05-cv-180, 2005 WL 6218035, at *4 (M.D. Fla. Mar. 11, 2005) (converting TRO to preliminary injunction where school challenged denial of accreditation that would have resulted in loss of funding); *Fla. Coll. of Bus. v. Accrediting Council for Indep. Colleges & Schools*, 954 F. Supp. 256, 259–60 (S.D. Fla. 1996) (same). As to La Salle's First Amendment claim, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 398194, at *7 (11th Cir. Aug. 22, 2024) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Accordingly, the Court finds that La Salle has adequately shown irreparable injury that will be suffered if relief is not granted as to Counts I through III.

### C. Balancing Threatened Injury and Public Interest

Where the opposing party is a governmental entity, the last two factors "balancing . . . the harm and the public interest merge." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1206 (S.D. Fla. 2020). La Salle argues that the City would not suffer any harm on the facts here, and points to the fact that the City already indicated its agreement that the HHA is a "community service organization" within the meaning of Fla. Stat. § 1002.42(19)(a), which would mean La Salle may properly use the Property as a private school, which is consistent with the relief sought here. Mot. at 19; Compl. ¶¶ 121–22. As to the public interest, La Salle argues that it is serving a vital purpose to the local underserved community, a purpose it argues is publicly recognized as important as shown by the HHA's continual leasing of the Property to La Salle and La Salle's receipt of state and federal funds. Mot. at 19–20. La Salle also points to the general public interest of protecting First Amendment rights. *Id.* at 20; *see also Gray v. Kohl*, No. 07-cv-10024-KMM, 200 WL 9702480, at *1 (S.D. Fla. Nov. 14, 2007) ("Defendants' claim that Plaintiff can simply choose another location, outside of the school safety zone, to distribute Bibles is unpersuasive."); *Grayned v. City of Rockford*, 408 U.S. 104, 119 n.40 (1972) ("It goes without saying that one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." (citation omitted)). The Court agrees with all of the foregoing points, and accordingly finds that La Salle has adequately shown no harm to the City and service of the public interest.

### IV. CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that La Salle's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 11) is

GRANTED IN PART as to the temporary restraining order and DEFERRED as to the preliminary injunction. It is further ORDERED:

1. Until an order is entered as to La Salle's request for a preliminary injunction:

    a. The City is hereby DIRECTED to issue a temporary certificate of occupancy for "E" use of the Property identified as seven units located at 13352 SW 314 Street, in Homestead ("Property") upon entry of this Order and no later than September 26, 2025;

    b. The City, its officers, employees, agents, successors and all others acting in concert with them are hereby ENJOINED from applying its laws in a manner that violates the Free Exercise Clause of the First Amendment to the United States Constitution, the RLUIPA, or undertaking any and all action in furtherance of these acts;

    c. La Salle may utilize the Property as a school without the necessity of seeking any zoning approval from the City or County and without any interference from the City;

2. Upon receipt of this Order, La Salle is DIRECTED to serve a copy of the same on the City;

3. Pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, the above-captioned Cause is hereby REFERRED to United States Magistrate Judge Marty Fulgueira Elfenbein to take all necessary and proper action as required by law and/or to issue a Report and Recommendation with respect to La Salle's request for a preliminary injunction (ECF No. 11);

4. Upon receipt of this Order, La Salle is INSTRUCTED to schedule a hearing before United States Magistrate Judge Marty Fulgueira Elfenbein, at which time the City and/or any other

affected persons may challenge this Order and move to dissolve the same, and at which time the Court will hear argument on La Salle's request for a preliminary injunction;

5. Both La Salle and the City shall be permitted, but not required, to file any additional briefing and supporting exhibits in advance of any preliminary injunction hearing, and any response to La Salle's Motion for Preliminary Injunction must be filed and served on La Salle's counsel at least FORTY-EIGHT (48) HOURS prior to the hearing and filed with the Court, along with proof of service;

6. The foregoing dates and times may be revised upon stipulation by all Parties and approval of this Court, and the City is hereby notified that failure to appear at the hearing may result in the imposition of a preliminary injunction against it.

DONE AND ORDERED in Chambers at Miami, Florida, this __25th__ day of September, 2025.

*K. M. Moore*
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record